## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHLEEN S. MARKWARDT,                  :
                                        :
            Plaintiff,                   :
                                        :
                                        :   CIVIL ACTION
        v.                              :
                                        :
KILOLO KIJAKAZI,                        :   No. 22-cv-02355-RAL
Commissioner of Social Security         :
                                        :
            Defendant                   :
                                        :

**RICHARD A. LLORET**                          **January 17, 2023**
**U.S. MAGISTRATE JUDGE**


### <u>MEMORANDUM OPINION</u>

The Commissioner of Social Security, through the decision of an Admnistrative Law Judge ("ALJ"), denied Plaintiff Kathleen S. Markwardt's ("Plaintiff's") application for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401–434. The ALJ determined that Ms. Markwardt was not disabled under the Social Security Act and its regulations. R. 26.[1] Ms. Markwardt now requests review of the ALJ's decision. *See* Doc. No. 6 ("Pl. Br.").  After careful consideration, I find that the ALJ erred by failing to consider certain medical records reflecting Ms. Markwardt's medical treatment following her last insured date when evaluating the severity of her impairments at step two of the sequential analysis. This error undercuts the ALJ's conclusions at steps three and four and necessitates remand.

---

[1] All references to the administrative record will be listed as "R. ____". The administrative record is document number eight on ECF.

## PROCEDURAL HISTORY

On November 18, 2019, Ms. Markwardt filed a claim for social security disability insurance benefits, alleging a disability onset date of November 27, 2015. R. 18, 186–189. Ms. Markwardt alleges that she cannot work due to vertigo, a traumatic brain injury, long thoracic nerve palsy with pain, depression, anxiety, post-concussion syndrome with loss of consciousness, and cognitive dysfunction. R. 18, 199. Ms. Markwardt's application was denied initially on May 19, 2020 (R. 85) and on reconsideration on January 27, 2021 (R. 102). Ms. Markwardt requested a hearing before an ALJ. R. 74. The request was granted, and a hearing was held on May 18, 2021, at which Ms. Markwardt was represented by counsel. R. 31–57. Ms. Markwardt and a Vocational Expert each testified. R. 31–57. Following the hearing, the ALJ found that Ms. Markwardt was not disabled under the Social Security Act during the relevant insured period. R. 26. On April 29, 2022, the Appeals Council denied Ms. Markwardt's request for review, making the ALJ's determination a final determination. *See* R. 1–6. Ms. Markwardt then filed an appeal in this court. *See* Doc. No. 1.[2]

## FACTUAL BACKGROUND

### I.    The Claimant's Background

Ms. Markwardt was fifty-five years old on the alleged disability onset date, making her an "individual of advanced age" under the regulations. R. 24; 20 C.F.R. §§ 404.1563. Ms. Markwardt is a college graduate (R. 37) and has past relevant work as an office manager/medical assistant. R. 38. On November 27, 2015, Ms. Markwardt was riding her bike when a dog ran in front of her, causing her to crash into the road. R. 230.

---

[2] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

Ms. Markwardt hit her head, losing consciousness, and injured the entire right side of her body, including her elbow and shoulder. As a result of her fall, Ms. Markwardt suffered a traumatic brain injury which has caused significant concentration and vestibular issues.

## II.    The ALJ's Decision

The ALJ found that Ms. Markwardt was not disabled under the Social Security Act during the relevant period. R. 26. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[3]

Prior to step one, the ALJ determined that Ms. Markwardt met the insured status requirements of the the Social Security Act .[4] R. 17. At step one, the ALJ confirmed that Ms. Markwardt had not engaged in substantial gainful activity during the period from her alleged disability onset date, November 27, 2015, through her last insured date, December 31, 2015. R. 17. At step two, the ALJ determined that Ms. Markwardt had two severe impairments: spondyloarthropathy of the cervical spine and a partial tendon tear of the right elbow. R. 17. At step three, the ALJ compared Ms. Markwardt's impairments

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[4] When an applicant is seeking disability insurance benefits, the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id*. The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

to those contained in the Social Security Listing of Impairments[5] and found that Ms. Markwardt's impairments, either individually or jointly, did not meet or medically equate to the severity of one of the listed impairments. R. 18–20.

Prior to reviewing step four, the ALJ determined that Ms. Markwardt had the residual capacity ("RFC") to perform the full range of sedentary work.[6] R. 20.

At step four, the ALJ determined that Ms. Markwardt was unable to perform any past relevant work, in light of the Vocational Expert's testimony that Ms. Markwardt's RFC precludes past work. R.24. The ALJ then noted that Ms. Markwardt was fifty-five years old on the alleged disability onset date, making her an "individual of advanced age" under the guidelines. R. 24. The ALJ also acknowledged that Ms. Markwardt has acquired skills from her past relevant work, including: record keeping, appointment setting, file manipulation and keeping, and general office duties with copiers, computers and printers. R. 24–25.

At step five, the ALJ determined that Ms. Markwardt "had acquired work skills from past relevant work that were transferrable to other occupations with jobs existing in significant numbers in the national economy," including the job of a receptionist, an information clerk, and an appointment clerk. R. 25. The ALJ ultimately concluded that Ms. Markwardt was not disabled during the relevant period. R. 26.

---

[5] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

## III.    Title II Disability Insurance Benefits

Ms. Markwardt filed a Title II application for disability insurance benefits ("DIB"). The DIB program provides for payment of benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund, paid through Social Security earnings taxes. 20 C.F.R. §§ 404.110, 404.315. To be entitled to disability insurance benefits, a claimant must establish disability *on or before* her date last insured. *See* 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id.* The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a). If the Commissioner finds that the claimant did not meet the statutory definition of disability before her insured status expires, the Commission will not determine whether the claimant is currently disabled or was disabled prior to applying for benefits. *See Soc. Sec. Ruling, SSR 18-01p; Titles II & Xvi: Determining the Established Onset Date (EOD) in Disability Claims*, SSR 18-01P (S.S.A. Oct. 2, 2018). "Because entitlement and eligibility depend on non-medical requirements, . . . some claimants who meet the definition of disability may not be entitled to benefits under title II[.]" *Id.* at *5.

### STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*,

181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Commr. of Soc. Sec.*, 99 Fed. Appx. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Ms. Markwardt, through counsel, presents two issues for my review. She first alleges that the ALJ's failure to classify the injuries to Ms. Markwardt's shoulders, her long thoracic nerve palsy, and her post-concussion syndrome as "severe impairments" represents a reversible and harmful error of law. Pl. Br. at 3. Ms. Markwardt then alleges that the ALJ and Appeals Council Judges who ruled on her claim "had no legal authority to adjudicate this case because they were not properly appointed." Pl. Br. at 3. The Commissioner responds that the ALJ "correctly found that Plaintiff failed to carry her

burden" during her narrow insured period. Comm. Br. at 1. For the reasons discussed below, I find that this matter warrants remand.

I.     **The ALJ erred at step two by limiting his review of the severity of Ms. Markwardt's impairments only to treatment records dated during the insured period.**

Ms. Markwardt alleges that the ALJ erred by failing to properly classify certain of her impairments as "severe" impairments at step two. Pet Br. at 14–20. She specifically alleges that her "well documented evidence of postconcussion syndrome/traumatic brain injury strongly suggests that Plaintiff's ability to concentrate at the level required by semiskilled work would be substantially compromised" and that, had she been limited to "unskilled sedentary work," the Medical Vocational Rules call for a finding of "disabled." Pet. Br. at 19. The Commissioner responds that the ALJ did not err in its evaluation of Ms. Markwardt's limitations, but regardless, any possible error at step two is harmless because "the ALJ found in Plaintiff's favor at step two, and then considered Plaintiff's nonsevere shoulder impairments, long thoracic nerve palsy, and post-concussion syndrome along with other impairments in formulating the RFC." R. 20. Because the ALJ did not explain why he limited his review only to medical records dated during Ms. Markwardt's insured period, he has not provided sufficient analysis for me to make a proper determination on review.

At step two, the ALJ is required to consider the medical severity of any medically determinable impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" where it significantly limits the claimant's ability to perform "basic work activities." *See* 20 C.F.R. §§ 404.1520(a), (c), 416.920(a), (c); *see also* 20 C.F.R. §§ 404.1522, 416.922. To meet the durational requirement, the severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *See* 20 C.F.R.

§§ 404.1509, 416.909. The claimant has the burden of establishing a severe impairment, at step two, but it "is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). The claimant must only "demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* (internal quotation marks omitted) (quoting SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)). If there is any doubt as to whether this standard has been met, the ALJ should resolve the issue in favor of the claimant. *Id.* (citing to *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546–47 (3d Cir. 2003)).

Here, after identifying two other severe impairments, the ALJ addressed Ms. Markwardt's traumatic brain injury and post-concussion syndrome. Finding those conditions to be "non-severe," the ALJ explained:

> The record indicates the claimant was treated in the emergency room on November 27, 2015 for a closed head trauma due to a bicycle fall. On exam, she had a normal cerebellar exam, normal gait, and normal mental status. She had a normal memory. The claimant did report being dazed and slightly confused after her accident and indicated she had a headache. CT of the brain was unremarkable. The claimant followed up with her primary care provider on November 30, 2015. She reported she initially had headaches, but now only has them slightly. Neurological findings were normal with negative finger to note and negative pronator drift. Physical therapy was ordered. On December 14, 2015, she followed up with her primary care provider. Her provider did not note abnormalities with her mental status or other clinical findings of a concussion and she was prescribed pain medication and a muscle relaxant. She briefly treated concussion symptoms at physical and occupational therapy starting December 16, 2015 and she reported less headaches and some trouble concentrating. On December 18, 2015 the claimant indicated her headaches were only intermittent and she felt they were mild to moderate. Absent from the record was treatment with a neurologist or other specialist for the claimant's post-concussion syndrome during the relevant period. The minimal clinical findings on exam indicated normal neurological findings and normal mental status and do not support the claimant's alleged concognitive limitations from a traumatic brain injury or post-concussion syndrome. The record does not indicate symptoms

from her concussion persisted for more than 12 months or caused more
than a minimal effect on the ability to work prior to the date last insured.

R. 18 (internal citations omitted). The medical records cited by the ALJ relate only to

treatment within the insured period, which ended December 31, 2015.

Ms. Markwardt alleges that, "for impairments that result from a traumatic injury

or event, the SSA begins with the date of the traumatic event."[7] Pl. Br. at 15. She urges

that "[t]he medical evidence clearly establishes a link between Plaintiff's traumatic fall

from a bicycle on November 27, 2015 and injuries to her shoulders, long thoracic nerve

injury, and symptoms related to postconcussive syndrome" and that such evidence

"should have been taken into account by the ALJ when assessing Plaintiff's RFC."

Doc. No. 8 at 2 ("Pl. Reply").  The Commissioner argues that the ALJ properly

supported his finding that "Plaintiff could still manage the demands of sedentary work

during the four and one-half week period at issue" by citation to medical records dated

during the insured period. *See* Comm. Br. at 20–21.

Retrospective medical evidence should not be automatically rejected. *Newell v.
Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) ("[E]ven non-contemporaneous

records of [claimant's impairments] are relevant to the determination of whether their

onset occurred by the date [claimant] alleges."). "'[M]edical evaluations made after the

---

[7] Ms. Markwardt argues that the ALJ is bound to review such evidence by Social Security Ruling 18-1
("SSR 18-1"). SSR 18-1 provides guidance for how an ALJ can determine the established onset date "in
claims that involve traumatic, non-traumatic, and exacerbating and remitting impairments." SSR 18-1.
The Ruling instructs that, "[f]or impairments that result from a traumatic injury or other traumatic event,
we begin with the date of the traumatic event, even if the claimant worked on that date. . . . If the evidence
of record supports a finding that the claimant met the statutory definition of disability on the date of the
traumatic event or traumatic injury, we will use that date as the date that the claimant first met the
statutory definition of disability." *Id.* at *5. This is date may differ from the typical situation where the
disability onset date is the last date that the claimant performed substantially gainful activity. *Id.* The
disability onset date is not at issue in this case—Ms. Markwardt and the Commissioner each agree that
November 27, 2015 is the correct onset date. Rather, Ms. Markwardt seeks to use evidence that post-dates
her date last insured to prove that she was disabled during the insured period, thus her reliance on
SSR 18-1 appears misplaced.

expiration of a claimant's insured status are relevant to an evaluation of the [claimant's] pre-expiration condition,' because such evidence 'may bear upon the severity of the claimant's condition before the expiration of his or her insured status.' . . . [I]n considering such subsequent medical evidence, one must keep in mind that '[i]t is the disability, and not just the impairment, that must have existed before the [claimant's] insured status expired.'" *Lewis v. Astrue*, No. 11-3986, 2012 WL 1231878, at *7 (E.D. Pa. Apr. 11, 2012) (citations omitted).

Here, the ALJ did not explain his decision to limit his review solely to treatment records dated during the insured period. *Newell*, 347 F.3d at 547 ("[T]he ALJ failed properly to consider the non-contemporaneous evidence" when determining whether claimant was disabled before her date last insured); *see Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995) ("[P]roperly corroborated retrospective medical diagnoses can be used to establish disability onset dates."); *McLendon v. Barnhart*, 184 Fed.Appx. 430, 431 (5th Cir. 2006) ("[R]etrospective medical diagnoses may constitute relevant evidence of pre-expiration disability[.]").

Ms. Markwardt has a long history of problems related to a shoulder injury, long thoracic nerve injury, and post-concussive syndrome dating back to a serious bicycle accident occurring in November 2015. She submitted volumes of records which indicate that her injuries are significant and that they began during her insured period. *See* Doc. No. 5-7–5-11. Ms. Markwardt summarizes her extensive treatment history at pages three through fourteen of her Brief and Statement of Issues. *See* Pl. Br. at 3–14. Many of these records are dated after the insured period but nevertheless provide guidance on the severity of Ms. Markwardt's injuries as of the date of her accident.

11

For example, regarding Ms. Markwardt's shoulder injury, physical medicine and rehabilitation specialist Jeffrey M. Friedman, M.D. stated, in records dated March 2017, that "the injury was November 2015, and she more likely than not has a permanent injury because of the extent of the injury, lack of recovery, and a long period of time since the injury." R. 317. Dr. Friedman further noted that Ms. Markwardt's "long thoracic nerve injury on the R is permanent and that the best thing she can hope for would be to improve her strength somewhat[.]" R. 417. Ms. Markwardt's sports medicine doctor John McShane, M.D. similarly noted, in records dated August 2017, that Ms. Markwardt suffers from "pain in both of her shoulders" which "dates back to November 2015 when she fell off her bike." R. 2417. He specifically noted that she has "what appears to be a long thoracic nerve injury in her R shoulder and I suspect that this injury is permanent." R. 2418. Regarding Ms. Markwardt's concussion-related symptoms, Dr. Friedman noted that Ms. Markwardt "suffered a fairly significant injury from a fall off a bicycle including concussion with a loss of consciousness and postconcussive syndrome with postconcussive vertigo and cognitive dysfunction." R. 316.

These later records should have put the ALJ on notice that the injuries Ms. Markwardt suffered in November 2015 may have been severe during the relevant period. Consequently, the ALJ should have evaluated Ms. Markwardt's disability in light of such evidence. The ALJ does not reference these later records and does not indicate why he ignored them. If he did not find these later records consistent with the contemporaneous records, he should have explained why. *Plummer,* 186 F.3d at 429 ("When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot

reject evidence for no reason or for the wrong reason.' The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

Because the ALJ has not explained whether or why he ignored relevant medical records evidencing serious injuries Ms. Markwardt sustained as a result of her November 2015 bike accident, he has not provided a sufficient analysis for me to make a proper determination on review. Therefore, I find that the ALJ erred, and remand is warranted. On remand, the ALJ is instructed to evaluate any post-insured period medical records which are relevant to an evaluation of Ms. Markwardt's condition during the insured period. The ALJ should conclude whether, in light of this evidence, Ms. Markwardt's shoulder injury, long thoracic nerve palsy, and postconcussion syndrome were "severe" between November 27, 2015 and December 31, 2015 and what impact, if any, his conclusions have on the subsequent steps of his analysis.

## II. The ALJ and Appeals Council Members were properly appointed and so had authority to adjudicate Ms. Markwardt's appeal.

Ms. Markwardt argues that the ALJ and Appeals Council members who adjudicated her claim were not properly appointed by then-Acting Commissioner Nancy Berryhill nor by any subsequent Commissioner or Acting Commissioner and so lack any authority to rule in her case. Pl. Br. at 20–21. The Commissioner responds that the ALJ and Appeals Council members were properly appointed (Comm. Br. at 6–19) and that holding otherwise would "create the administrative paralysis that Congress sought to avoid" when it enacted the appointment statute. Comm. Br. at 16. I find that the ALJ and Appeals Council members were properly appointed and, thus, remand on this issue is not necessary.

The Federal Vacancies Reform Act, 5 U.S.C. §§ 3341-49 ("FVRA"), sets out who may serve as an acting official and establishes "the means for 'temporarily authorizing an acting official to perform the functions and duties' of a vacant executive branch position requiring Presidential appointment and Senate confirmation." *Hernandez v. Kijakazi*, No. 22-1556, 2022 WL 17751355, at *10 (D.N.J. Dec. 19, 2022); *see* 5 U.S.C.A. § 3347. The temporary authorization is limited by Section 3346(a)(1), which restricts an acting official's service to "no longer than 210 days beginning on the date the vacancy occurs," and Section 3346(a)(2) which states that an acting officer may serve "once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C.A. § 3346(a)(1)-(2). Under the FVRA's enforcement provision, "[u]nless an officer or employee is performing the functions and duties in accordance with [Sections] 3345, 3346, and 3347 . . . the office shall remain vacant" and "only the head of such Executive agency may perform any function or duty of such office." 5 U.S.C.A. § 3348(b)(1)-(2). As a result, any action taken by an acting official not in compliance with sections 3345, 3346 and 3347 "shall have no force or effect." 5 U.S.C.A. § 3348(d)(1); *see Hernandez*, 2022 WL 17751355, at *10.

Ms. Berryhill began serving as Acting Commissioner of the Social Security Administration on January 20, 2017 and served until her 210-day term ended on November 16, 2017. See Pl. Br. at 20; Comm. Br. at 6. The Commissioner position thus became vacant on November 17, 2017, following the expiration of Ms. Berryhill's initial term. *See* 5 U.S.C. § 3348; *Hernandez*, 2022 WL 17751355, at *11. On April 17, 2018, President Trump nominated Andrew Saul to be the new Commissioner. *See* Pl. Br. at 6; Comm. Br. at 20. At that time, the Social Security Administration interpreted Section

3346(a)(2) to permit Ms. Berryhill to resume her role as Acting Commissioner for the period Mr. Saul's nomination was pending in the Senate. Comm. Br. at 7; *Hernandez*, 2022 WL 17751355, at *11. During that period, on July 16, 2018, Ms. Berryhill ratified the appointments of all SSA ALJs and Appeals Council members, including those involved in this case. See Pl. Br. at 20; Comm. Br. at 7.

Ms. Markwardt claims that any actions taken by Ms. Berryhill, as Acting Commissioner, post-November 16, 2017 were unlawful and requests that I accept the reasoning of the Minnesota district court in the cases *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022) and *Richard J. M. v. Kijakazi*, No. 19-827, 2022 WL 959914 (D. Minn. Mar. 30, 2022). Pl. Br. at 20–21 ("Plaintiff offers the exact same arguments here as the claimant in those cases."). In *Brian T.D.*, the district court analyzed whether Ms. Berryhill's service as Acting Commissioner extended beyond the 210-day limit. *Brian T.D.*, 580 F. Supp. 3d at 625–32. The district court concluded it did not and held that, because Ms. Berryhill's 210-day term expired, she lacked authority to lawfully ratify the ALJ and Appeals Council members in July 2018. *Id.* at 635–36. The district court remanded the case for a new hearing before a properly appointed ALJ. *Id.* at 636. Following the same reasoning, the district court in *Richard J.M.* concluded that the ALJ who made the plaintiff's disability determination was not properly appointed and remanded the matter back to the SSA for a decision before a properly appointed ALJ. *See Richard J. M.,* 2022 WL 959914, at *10.

The Third Circuit has not yet addressed this issue. Rather, I find guidance in *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023) where the Court of Appeals for the Eighth Circuit determined that the FVRA authorizes an "individual who has ceased serving [the 210-day term] under [Section] 3346(a)(1) to begin serving again under

[Section] 3346(a)(2) once a nomination is sent to the Senate." 62 F.4th at 427.[8] Following the Eighth Circuit's reasoning, I find that Ms. Berryhill's authority as Acting Commissioner resumed on the date of Mr. Saul's nomination on April 17, 2018 and remained until Mr. Saul assumed office on June 17, 2019. Therefore, Ms. Berryhill acted lawfully in July 2018 when she ratified the appointments of the ALJ and Appeals Council members. Because the ALJ and Appeals Council members who adjudicated Ms. Markwardt's claim were properly appointed, I find that their decisions were made with valid authority and do not remand on these grounds.

## CONCLUSION

Based upon the above, Plaintiff Kathleen Markwardt's request for review is granted. The final decision of the Commissioner is reversed, and this matter is remanded for further proceedings.


**BY THE COURT:**


 s/ Richard A. Lloret
**RICHARD A. LLORET**
**U.S. Magistrate Judge**

---

[8] In doing so, the Eighth Circuit joined numerous district courts (including district courts within our circuit) in rejecting the argument that then-Acting Commissioner Berryhill violated the FVRA when she ratified the appointment of the SSA ALJs and Appeals Council members on July 16, 2018. *See e.g.,* *Ortiz-Rivera v. Kijakazi*, No. 21-02134, 2023 WL 25353 (M.D. Pa. Jan. 3, 2023); *Hernandez v. Kijakazi*, No. 22-01556, 2022 WL 17751355 (D.N.J. Dec. 19, 2022); *Bernadette H. v. Comm'r of Soc. Sec.*, No. 21-20586, 2022 WL 17080743 (D.N.J. Nov. 18, 2022); *Neale v. Kijakazi*, No. 21-915, 2022 WL 6111689 (D. Del. Oct. 7, 2022). On April 11, 2023, in the case *Rush v. Kijakazi*, 65 F.4th 114 (4th Cir. 2023), the Fourth Circuit likewise held that an acting officer may serve while a nomination is pending in accordance with Section 3346(a)(2) regardless of whether her service under Section 3346(a)(1) expired before the nomination was submitted and, thus, Ms. Berryhill was properly serving as Acting Commissioner when she ratified the ALJs' appointments.